UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONIA SCHAMBERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:16-cv-2406-WTL-DLP |
| | ) |
| KEY FAMILY OF COMPANIES, | ) |
| | ) |
| Defendant. | ) |

# ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Key Family of Companies' ("Key Companies") motion for summary judgment (Dkt. No. 33). The motion is fully briefed, and the Court, being duly advised, now **GRANTS** the Defendant's motion for summary judgment for the reasons set forth below.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). A party who bears the burden of proof on a particular issue may not rest on its pleadings, but must show what evidence it has that there is a genuine issue of material fact that requires trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of

record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. FACTUAL BACKGROUND

### A. Premium Analyst

Key Companies provides benefit plan administration to insurance carriers. In March 2008, Plaintiff Tonia Schambers began working as a Premium Analyst in Key Companies' Operational Accounting Department. She began as a temporary employee but transferred to regular employee status within months of her initial hiring date. Prior to Key Companies, Schambers worked for two years in accounts receivable at Wellfount Pharmacy and Standard Management.

By 2010, Schambers had been promoted to Cash Posting Team Lead in the Operational Accounting Department, and reported directly to Vice President of Commission and Premium Accounting, Gretchen Wilkening, who is female. As team lead, Schambers had the authority to develop corrective action plans and give written warnings, and also was involved in the hiring process. Schambers considered the new position a promotion.

Wilkening evaluated Schambers' work performance annually. In her performance evaluation of Schambers for the period of September 2010 to September 2011, Wilkening noted that Schambers needed to be more receptive to suggestions from peers and to consider other perspectives when working collaboratively. In August 2011, Wilkening counseled Schambers and one of her colleagues for "ongoing communication issues" and admonished both employees to keep verbal communications limited to work-related topics and to maintain a professional manner. Dkt. No. 33-3 at 3. She stated that further issues would result in a formal written warning.

2

In Schambers' September 2011 to September 2012 evaluation, Wilkening stated that she wanted Schambers to get more involved in process improvement. Patrick Cohen, Vice President of Billing and Eligibility, who was Wilkening's supervisor, also signed the review. The review stated:

> Tonia, this is a decent review but I do expect more. I believe there are several key areas within this review that focus should be directed to, mainly anything with a scoring of 3 or below. We elevated you from Poster to Team Lead primarily based on the skill level you bring to this task. You have also proven yourself worthy of completing almost every task assigned with little follow up or guidance which is a major asset to the department. Where we felt you may have been weak was in the area of leadership. In reading this review I continue to see some alarm bells in this regard. Following Corporate guidelines, Consistently leading Team Meetings, Treating Co-Workers with Dignity … are all areas where I expect a Team Lead to excel, not simply just be meeting the requirements and never below them. Please make an effort to improve in these areas and do not be afraid to ask for help as to how to do this.
>
> One requirement I would like to add within your next review period is some recommended reading. I think that your intentions are good but that sometimes you are a bit abrupt and possibly taken out of context. I would like you to focus on Diplomacy. I will select the reading material on this subject and then I'd like for the 3 of us (Gretchen, Tonia, Patrick) to read and discuss together.

Dkt. No. 33-2 at 83. Also during this period, Schambers received a documented verbal warning for failing to clock out when she left the building for breaks.

In the September 2012 to September 2013 review, Wilkening noted significant improvement in Schambers' leadership qualities. Wilkening stated, "I am confident in [Schambers'] ability to lead the posting team through the possible hurdles ahead and still 'get the job done' in the best way possible." *Id.* at 88. Cohen provided similar praise and stated, "Great job [Schambers]. I know we have provided you tough feedback in the prior reporting period and I'm really glad to see the types of comments above. It shows me that you took that feedback constructively and worked to make positive change. . . . Keep up the great work!" *Id.* at 89.

Following the enactment of the Affordable Care Act in 2014, Key Companies received a significant increase in its workload. In Schambers' September 2013 to September 2014 review, Wilkening complimented Schambers on handling the new challenges associated with the increased business. Cohen praised her for responding to prior feedback about her performance.

### B. Applications for Promotions

In October 2014, Schambers applied for a Reporting and Audit Specialist position. Key Companies offered Schambers the job, but she declined the offer because it would have been a lateral move and not a promotion. Schambers stated that she aspired to a managerial role and did not have interest in a lateral move.

In December 2014, Key Companies created two new Team Lead roles: Weekly Admin Premium Processing Team Lead and Monthly Admin Premium Processing Team Lead. Key Companies gave the Weekly Team Lead to Schambers effective December 22, 2014. Schambers received a pay raise and considered the move a promotion. She continued to report directly to Wilkening.

Key Companies has guidelines with respect to "Promotions/Transfers" that state, in part, "Every effort is made to select the best qualified of our employees to fill promotional opportunities as they occur throughout the Company. *We expect that each individual will stay in any new position a minimum of 12 months, to allow both the individual and the Company to grow and develop*." *Id.* at 22 (emphasis in original).

On February 25, 2015, Schambers applied for a Benefit Consultant position. She interviewed with Ramona Adams, who told Schambers that she wanted Schambers for the job, but Cohen called and told her that she was needed in her current role.

4

In April 2015, Wilkening encouraged Schambers to apply for an Enrollment Platform Manager position. Schambers did not believe that she was qualified for the position, but still applied. Although she received an interview, Schambers was not offered the position. Following her rejection for the position, Schambers submitted a letter of resignation, which stated that she "just didn't know if [she] was going to go anywhere within the company." Dkt. No. 33-1 at 20.

Wilkening persuaded Schambers to rescind her resignation and remain in her current position. In doing so, Wilkening informed Schambers of a new position for an Implementation Manager, which would pay $55,000. Wilkening stated in an email, "We would love for you to apply for the Team Management position once it is advertised. At the time that we would offer your [sic] for one of those positions and based upon your acceptance, we would grant the increase of your annual salary to $55,000 as discussed." Dkt. No. 33-2 at 105. Schambers sought "clarification" about whether Wilkening was "offering [Schambers] the position before it's created and the salary to go with it?" *Id*. Wilkening responded that Key Companies "cannot offer a position before it is created nor can we promise your selection for the positions once they are posted." *Id.* She continued, "However, based on your work experience and expressed desire for more responsibility within [Key Companies], . . . we are sure you would be an excellent fit for the positions and would warrant serious consideration for one of the Team Management positions . . . [at] the salary discussed, as these would be at a management level." *Id.* at 104.

### C. David Baize

In July 2015, Key Companies hired David Baize as a temporary Premium Analyst on Schambers' team. In September 2015, Key Companies hired Baize to be a full-time employee.

Baize worked underneath Schambers, but received a higher wage. Schambers earned $19.20 per hour and Baize earned $21.50 per hour.

### D. Assistant Manager Position

In October 2015, Key Companies created three new Assistant Manager positions in Operational Accounting, one of which was an Assistant Manager for Premium Processing ("Assistant Manager"). The Assistant Manager would manage the daily functions of the Premium Processing and Weekly Administration processes. The job posting listed the essential duties and responsibilities of the position and also noted several supervisory responsibilities. Under the section labeled Competencies, Knowledge, Skills and Abilities, the posting stated the following: (1) Proficient in Microsoft Excel; (2) Working knowledge of Microsoft Outlook and Sharepoint; (3) Strong organizational skills; (4) Ability to manage multiple tasks and priorities; (5) Strong verbal, written, and interpersonal skills; (6) Analytical approach to tasks and issues; (7) Innovative and creative; (8) Demonstrated leadership skills; (9) Maintain a positive attitude; (10) Bachelor's Degree in Accounting or like field preferred; and (11) Prior Management or Staff Oversight required.

Both Schambers and Baize applied for the Assistant Manager position and both were interviewed by the same four individuals: Wilkening (female); Cohen (male); Joel Githiri, Director of Commission and Premium Accounting (male); and Angela Cromer (female), Senior Vice President of Fully Insured Partner Relationships. Key Companies chose Baize for the Assistant Manager position "based on his education and experience, job performance at [Key Companies], and answers to interview questions." Dkt. No. 33-3 at 4.[1]

---

[1] In its brief, Key Companies sets forth a chart of the strengths and weaknesses of both Baize and Schambers as assessed by the interviewers and in support cites to Deanne Raymer's Affidavit and accompanying Exhibit F. Exhibit F, however, only contains the interview notes

Githiri's interview notes for Baize cited the following positive attributes: (1) several years of management experience; (2) Six-Sigma certification is a "big plus in this position;" (3) ability to judge several different high-priority responsibilities; (4) already thought through high-level improvements for the team; (5) would work "very well together and seem to be aligned in the future plans of the team;" and (6) despite having only been an employee for a few months, has made a positive impact. *Id.* at 23. Githiri did note that it would take Baize some time to get accustomed to the processes, but believed that Baize could do so without any issues. He also wished Baize was more assertive in making suggestions for process changes.

Cohen stated that he was "extremely impressed" and that his "experience far supersedes his current role." *Id*. He commended Baize's extremely strong verbal communication skills and took note of his Six-Sigma certification. He also noted his quick adaptation to his current position and concluded that Baize was "[v]ery proactive and shows good management initiative." *Id.* Cohen thought the weakest part of the interview related to a question about his mentor experience and noted that "[Baize] didn't blow me away with the answer." *Id.* He continued, however, that the good outweighs the bad and stated, "I think he would do extremely well in this role and beyond. He's got my recommendation for sure." *Id.*

Cromer stated that Baize has a great background with solid experience managing 6-150 employees over the course of eight years. She noted that he "[i]nterviewed very well with outstanding communication skills." *Id.* at 24. She also liked his Six-Sigma certification and that he is process driven. She also agreed with his "very mellow and even keel" personality. *Id.*

---

for Baize's interview. *Id.* at 22-24. Because Key Companies failed to attach the notes for Schambers' interview or otherwise point to evidence to support the information relating to her that is contained in the chart, the Court will only consider the information with respect to Baize's interview.

Cromer also noted that he was "very independent," which would allow him to run with projects and that he was a "quick learner." *Id.* The only negative she cited was that he would require additional training, but she believed he would adapt quickly.

Finally, Wilkening stated, "Although I was only in the interviews to listen and to support both candidates, I agree with my peers [sic] assessment of [Baize] and their selection of him for the proposed role." *Id.*

Deanne Raymer, who worked in Human Resources, told Schambers she was not selected for the position. Raymer told her that she was not hired because of a "lack of professionalism and not moving the team forward enough." Dkt. No. 32-1 at 30. Githiri told Schambers that Baize was selected based on his background and the fact that he possessed a degree.

Schambers did not believe their reasoning and stated, "They hired him because he made more money than I did. Because he's a male, . . . I was already doing the job and the job functions, so why hire him if you already have somebody in the position doing those job functions." *Id.* When asked further why she believed that Key Companies hired Baize over her, Schambers stated that she was already in a managerial role and received great performance reviews, "then all of a sudden here comes this guy that's underneath [her], doesn't have the time or tenure in, doesn't follow the handbook, and they give him the position. What else am I supposed to believe?" *Id.* With respect to the handbook comment, Schambers cited Baize's promotion before serving twelve months in his current position.

Moreover, Githiri told Schambers that "him [sic] and [Baize] [were] on the same playing field because they went to the same college. They both went to IU . . . .Both of them went to the same college. He has a college degree, has management background, that's why he got the position." Dkt. No. 33-1 at 32. When asked why she thought the comment "same playing field"

8

related to gender, Schambers responded, "Because that's usually what it is; same playing field. To me I took it as same playing field. They're males. They went to the same college." *Id.*

### E. Voluntary Resignation

On November 16, 2015, Schambers emailed Githiri and Baize her resignation. It stated, "I am writing to announce my resignation from Key Family of Companies, effective two weeks from 11/16/2015. My last day will be 11/27/2015." Dkt. No. 33-2 at 121. Schambers voluntarily resigned "[b]ecause [Baize] was still new to the company. I would have had to train him for a job they felt he fit their requirements." Dkt. No. 33-1 at 35.

### III. DISCUSSION

Schambers asserts two claims in her Complaint. She first claims that Key Companies promoted Baize over Schambers because of her gender in violation of Title VII of the Civil Rights Act. Schambers also claims pay discrimination under Title VII and the Equal Pay Act. Key Companies moves for summary judgment on both claims.

### A. Failure to Promote

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Schambers seeks to establish her claim for failure to promote based on the burden-shifting method set forth in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792 (1973). To survive summary judgment on her failure to promote claim under this method, Schambers must first establish a prima facie case by a preponderance of the evidence by showing that: (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was rejected for the position; and (4) the position was given to a person outside the protected class

9

who was similarly or less qualified than her. *Grigsby v. LaHood*, 628 F.3d 354, 358 (7th Cir. 2010). "After the plaintiff has made out a prima facie case, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for the employment action. This is a light burden." *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). Upon such a showing, the burden shifts back to the plaintiff to demonstrate that the offered explanation is pretextual. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008).

The parties do not dispute that Schambers is a member of a protected class, that she was rejected for the Assistant Manager role, or that she was qualified for the position. Thus, the analysis turns on whether Baize was "similarly or less qualified than" Schambers. *Jackson v. City of Chicago*, 552 F.3d 619, 622 (7th Cir. 2009). "If the person who got the promotion was better qualified, the plaintiff's case fails." *Id*.

Key Companies argues that Baize, when considering the skillset and requirements of the Assistant Manager position, was indisputably more qualified. The position stated that a "Bachelor's Degree in Accounting or like field preferred." Dkt. No. 33-3 at 16. Baize had both an Associate's Degree in Business Administration from Ivy Tech State College and a Bachelor's Degree in Business from Indiana University's Kelley School of Business, while Schambers had a GED. Key Companies also notes that prior management or staff oversight was required and that Schambers had only served as a Team Lead at Key Companies for a few years, whereas Baize had over eight years of managerial experience; this included director or management level positions at the Indiana State Department of Health, the Indiana Bureau of Motor Vehicles, and the Handleman Company. Thus, Key Companies argues, based on both experience and education, Baize was indisputably more qualified for the Assistant Manager position than Schambers.

Schambers responds, and the Court agrees, that Key Companies fails to address the other skills and attributes sought in the Assistant Manager posting. Although education and managerial experience are "preferred" and "required" categories, respectively, there are a host of other competencies that were to be considered for the position. Moreover, Schambers had been doing all of the proscribed tasks of the Assistant Manager position prior to its creation and would not need additional training. And in her April 2015 email requesting that Schambers rescind her resignation, Wilkening noted that Schambers would be an excellent fit for the newly created position. Finally, though Baize has a stronger educational background, both he and Schambers have managerial or staff oversight experience; whether Baize's external managerial experience or Schambers' supervisory experience at Key Companies was to be weighed more heavily is not clear from the record. Viewing the facts in the light most favorable to Schambers, a reasonable jury could conclude that Schambers and Baize were similarly qualified for the Assistant Manager position.

Having established her prima facie case, the burden now shifts to Key Companies to set forth a non-discriminatory, legitimate reason for hiring Baize over Schambers. Key Companies once again argues that Baize was more educated and possessed more managerial experience. It also cites to the fact that all four of the individuals who interviewed both Baize and Schambers—two of whom were women—unanimously agreed that Baize was the more qualified candidate.

Schambers fails to refute this evidence, and claims once again that, because she was similarly qualified, had received good reviews in the years leading up to her interview, and was already working as a team lead, she should have been entitled to the position. Schambers also notes that Baize texted her to say that Githiri, before the position was posted, told him that the Assistant Manager position was his if he wanted it. The only further evidence she cites is that

11

Baize worked under her and was still a probationary employee at the time he received the promotion over her.

But this is not enough to establish pretext, for "[a]n inquiry into pretext requires that we evaluate the honesty of the employer's explanation, rather than its validity or reasonableness." *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) (citations omitted). This requires more than a showing of faulty reasoning or mistaken judgment by the employer; it is a "lie, specifically a phony reason for some action." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006) (citation omitted). "To show pretext, a plaintiff must show that (1) the employer's nondiscriminatory reason was dishonest; and (2) the employer's true reason was based on a discriminatory intent." *Brown v. Ill. Dep't of Natural Resources*, 499 F.3d 675, 683 (7th Cir. 2007) (citation and quotation marks omitted). "Thus, in assessing a plaintiff's claim that an employer's explanation is pretextual, we do not sit as a 'super personnel review board' that second-guesses an employer's facially legitimate business decisions." *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (citation and quotation marks omitted). The Court need only ask whether the employer's explanation was "honestly believed." *Culver v. Gorman & Co.*, 416 F.3d at 540 (citation omitted). Schambers "can only avoid summary judgment by pointing to specific facts that place the employer's explanation in doubt." *Id*. (citation omitted).

None of the facts cited by Schambers demonstrate Key Companies' hiring of Baize over her was a lie. Although she may be a similarly skilled candidate given her qualifications, this factors into her prima facie case, not whether Key Companies' decision was pretextual. Moreover, even if Githiri texted Baize that the position was his prior to the interview, that fact alone does not negate Key Companies' reason for choosing him in the first place. *Walker v. Abbott Labs.*, 416 F.3d 641, 644 (7th Cir. 2005) ("[T]here is nothing to suggest discrimination in

an employer's bending the rules to give the better job or the higher salary to the more qualified applicant. That is just good management."). Indeed, Baize had two more degrees, including a Bachelor's Degree, which was a preferred qualification for the Assistant Manager position. He also had eight years of managerial experience. Key Companies valued this skill set and experience over Schambers', and Schambers has failed to set forth any evidence that this facially legitimate business decision was dishonest. Most importantly, Schambers has not proffered any evidence to demonstrate that Key Companies' decision to promote Baize instead of Schambers was because of her gender. Thus, Schambers has failed to set forth any evidence that the hiring decision involved discriminatory intent, which is fatal to her claim. *Teruggi v. CIT Grp./Capital Fin., Inc.*, 709 F.3d 654, 661 (7th Cir. 2013) (stating that even "if [the plaintiff's evidence showed pretext, that alone would not be sufficient to survive summary judgment" without some evidence pointing to a prohibited animus that caused the decision).

Accordingly, Key Companies is entitled to summary judgment on Schambers' failure to promote claim.

### B. Equal Pay Act

Key Companies claims that Schambers failed to include her Equal Pay Act claim in her Statement of Claims (Dkt. No. 30) and therefore forfeited it. In her Complaint, Schambers specifically alleged that she was discriminated against when Key Companies "hired a male employee to report to her and paid her less than him to do a job with more responsibilities." Dkt. No. 1 at 3. The approved Case Management Plan required each party, within fourteen days of the non-expert discovery deadline, to "file a statement of claims or defenses it intends to prove at trial, stating specifically the legal theories upon which the claims or defenses are based." Dkt. No. 14 at 2-3. In her Statement of Claims, however, Schambers does not mention her Equal Pay

Act claim and focuses solely on her failure to promote claim. Key Companies filed its brief in support of summary judgment and, understandably, took the position that Schambers had therefore abandoned her Equal Pay Act claim. Thereafter, on the same day she filed her response brief, Schambers attempted to revive her Equal Pay Act claim by filing an Amended Statement of Claims to include the claim. Dkt. No. 35.

In her response brief, Schambers claims that she did not discover the pay disparity until August 4, 2017, after the close of discovery, when her counsel discovered that a "corrupted file" was produced in discovery that had to be resent. Dkt. No. 36 at 10. Key Companies responds that it provided the allegedly corrupted file to Schambers' counsel on April 25, 2017, approximately three months before her Statement of Claims was due.

The Court agrees that Schambers' failure to include her Equal Pay Act claim in her initial Statement of Claims operated as an abandonment of that claim. Schambers presents no justifiable reason for waiting until approximately one month after the close of discovery to review the documents Key Companies had produced in response to her own discovery requests. Moreover, Schambers provides no defensible reason for failing to immediately move to amend her Statement of Claims to allow Key Companies to address the claim in its brief for summary judgment. Accordingly, Schambers has forfeited her Equal Pay Act claim.

Even if the Court were inclined to permit Schambers to resurrect her Equal Pay Act claim by filing her belated amended Statement of Claims, her Equal Pay Act claim would fail on the merits.

The Equal Pay Act prohibits discrimination in wages based on gender. "In order to prevail on an Equal Pay Act claim, an employee must first demonstrate unequal pay for 'equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which

are performed under similar working conditions.'" *Varner v. Ill. State Univ.*, 226 F.3d 927, 932 (7th Cir. 2000) (quoting 29 U.S.C. § 206(d)(1)). "[T]he provisions of the Equal Pay Act establish a rebuttable presumption of sex discrimination such that once an employee has demonstrated that an employer pays members of one sex more than members of the opposite sex, the burden shifts to the employer to offer a gender neutral justification for that wage differential." *Varner* 226 F.3d at 932. "The justification need not be a good reason, but merely a gender-neutral one." *Warren v. Solo Cup Co.*, 516 F.3d 627, 630 (7th Cir. 2008) (citation and quotation marks omitted). "The justification must also be bona fide. In other words, an employer cannot use a gender-neutral factor to avoid liability unless the factor is used and applied in good faith; it was not meant to provide a convenient escape from liability." *Id.* (citation and quotation marks omitted).

As stated more fully above, Key Companies has provided a bona fide, gender-neutral reason for paying Baize more than Schambers: he had a stronger educational background and considerable work experience. He also had Six-Sigma certifications and managerial experience. Schambers does not dispute these facts and merely states that "[t]here's no question that they were paid different amounts and worked in similar conditions . . . the only difference being that Schambers had more responsibility." Dkt. No. 36 at 11. Schambers fails to realize, however, that "[u]nder the [Equal Pay Act], differences in education and experience may be considered factors other than sex." *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 697 (7th Cir. 2006) (citation omitted). Schambers has only a GED compared to Baize's two degrees. Moreover, despite having less time with Key Companies, Baize had significantly more work experience. These discrepancies are adequate, gender-neutral grounds for paying Baize more than Schambers.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Dkt. No. 33) is **GRANTED**.

SO ORDERED: 4/16/18

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification